STATE

v.

**Gina M. LOCCISANO.**

**No. 2003–361–C.A.**

Supreme Court of Rhode Island.

Jan. 19, 2005.

---

Jane M. McSoley, Providence, for Plaintiff.

Catherine A. Gibran, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

WILLIAMS, Chief Justice.

The defendant, Gina M. Loccisano (defendant), appeals from a conviction of one count of larceny of a controlled substance issued after a bench trial. After hearing the testimony of several witnesses who worked with defendant at the Riverview Health Care Community (Riverview), the trial justice determined beyond a reasonable doubt that defendant had stolen thirty Vicodin tablets contained in a so-called "blister pack" from a cart that she was using to dispense medication. The trial justice sentenced defendant to five years at the Adult Correctional Institutions—with thirty days to serve in home confinement and the rest suspended, with probation—and one hundred hours of community service to be completed each year of her sentence. The defendant now appeals, asserting that the state failed to prove its case beyond a reasonable doubt.

## I

### Facts and Travel

The defendant's conviction arose from an incident that occurred at work on May 30, 2001.[1] The state presented evidence that at 7 a.m. defendant, a certified medical technician, began her shift at River-

view. She was in charge of dispensing medicines to patients on her floor and did so from a cart that had three drawers containing different medications. Testimony further revealed that a brand new blister pack containing thirty tablets of Vicodin had been placed in a drawer of the medicine cart the day before defendant's shift.

Around 11 a.m. a nursing student, Christine Cardiff (Cardiff), saw defendant in the coatroom placing what appeared to be a blister pack between the pages of a newspaper circular, and putting the entire package into her purse. Cardiff immediately informed her supervisor, Candice Barbera (Barbera), about what she had witnessed. Barbera testified that, after determining that a full blister pack of Vicodin was missing from the medicine cart, she went into the coatroom and cleaned up the newspapers that were lying around. The defendant saw Barbera and followed her into the coatroom, where defendant grabbed her own purse and walked out, telling Barbera that she was taking her lunch break. Another witness testified that she saw defendant get into her car and leave Riverview, returning about fifteen minutes later.

When defendant returned to work Tammy Cole (Cole), defendant's supervisor, searched defendant's purse with permission. Cole testified that although she did not find the missing Vicodin, she did find a drugstore circular similar to the one Cardiff had seen defendant wrap around the blister pack before putting them both into her purse.

---

1. A separate but similar incident occurred on June 30, 2001, resulting in seven charges against defendant relating to alleged larceny of a controlled substance, to wit, Vicodin. The cases were consolidated for trial, where the trial justice found the state did not prove its case on the seven counts arising from the later incident. Thus, this appeal concerns only the charge arising from the events of May 30.

The defendant was not allowed to dispense any medication for the ten days after the incident, and the Medicaid Fraud Unit of the Rhode Island Attorney General's Office launched an investigation. A criminal information was filed in September 2002, and the matter proceeded to a jury-waived trial. After hearing the state's witnesses,[2] the trial justice made the following findings:

"This Court finds the testimony of all, really, of the state's witnesses in regard to this incident or crime which occurred on May 30 * * * to be credible, particularly the testimony of the eyewitness, Cardiff, who saw [defendant] put this blister pack or this card in her pocketbook. Miss Cardiff impressed the Court as being credible, forthright, and honest, immediately reported it to a superior, and her observations, if you would, were corroborated by the fact that this card, which this Court finds beyond a reasonable doubt was in the med cart on May 30, 2001 at 7 a.m. when [defendant] came on duty and had sole and exclusive responsibility and control of that med cart from that time, 7 a.m., until approximately 11 or 11:30 a.m. * * *. And it's beyond dispute, and the Court finds it beyond a reasonable doubt, that that card containing those 30 Vicodins * * * [was] not there after [defendant] had left on or about 11:30 a.m. that morning and signed out, which is also contained in the records.

"Also, this Court finds [defendant's] * * * statement * * * that she never left the premises is not believable and was contradicted by what this Court finds to be believable testimony * * * that * * * [defendant] left the premises for a period of about 15 minutes. And this Court draws the inference from that testimony not only of guilty knowledge

* * * but also draws the inference from the fact that she had that card, that medication card, in her purse when she left the premises, and when she returned no longer had the card, that during that period of time she left the premises of Riverview in order to dispose of the medication card which she had stolen from the med cart * * *."

The defendant now appeals, asserting that the state's evidence did not establish her guilt beyond a reasonable doubt.

## II

### Discussion

█ "Our long established trial procedure practice has been, and remains, that in jury-waived trials in this state, the appropriate motion by which a defendant may challenge the legal sufficiency of the state's trial evidence at the close of state's case is by motion to dismiss." *State v. McKone*, 673 A.2d 1068, 1072 (R.I. 1996). The defendant in this case did not move to dismiss, or file any other motion, at any time after the state rested its case. In a post-hearing memorandum filed in response to a question posed during oral arguments, defendant maintains she "challenged the sufficiency of the evidence at the close of the state's case * * * and, several times during the course of [defense counsel's] closing argument, specifically contended that the state failed to meet its burden of proof * * *." A careful look at the transcript reveals that directly after the state rested, defendant rested and *immediately* began her closing argument. The *only* time throughout the entire trial that defendant raised the issue of whether the state met its burden of proof was during closing arguments.

2. The defendant did not present any evidence or testimony on her own behalf.

■ This Court will not review issues brought on appeal after a defendant has failed to preserve the issue by filing the appropriate motions. *See State v. Silvia,* 798 A.2d 419, 428 (R.I.2002) ("[T]he defendant has failed to preserve this contention on his direct appeal from his conviction by failing to submit any legal arguments to the Superior Court to support this position and by failing to file any appropriate motions with respect thereto, despite the sentencing justice's direct invitation for him to do so."). After the trial justice rendered his decision, he suggested that defendant might be interested in filing a motion for new trial and even scheduled the sentencing date so defendant would have time to file the appropriate motion. The defendant failed once again to take advantage of the opportunity to preserve the issue she now raises on appeal. The law is clear: we need not consider defendant's argument because no motion was made in the lower court from which she now may appeal.

■ Even if defendant had filed a motion to dismiss, a review of the record and transcripts reveals the evidence presented at trial supported the trial justice's verdict. When reviewing a motion to dismiss that was denied by a trial justice sitting without a jury, we defer to the trial justice's findings and reverse only when "it can be shown that he or she overlooked or misconceived relevant and material evidence or was otherwise clearly wrong." *Silvia,* 798 A.2d at 424 (quoting *State v. Traficante,* 636 A.2d 692, 694 (R.I.1994)). The defendant argues that the evidence against her was circumstantial; the trial justice was clearly erroneous in making the inferences he did because neither Cardiff nor Barbera was a credible witness; and the trial justice's reliance on defendant's pretrial statement her whereabouts on her lunch break was improper.

We have held that circumstantial evidence "alone may be sufficient to prove guilt beyond a reasonable doubt." *State v. Zmayefski,* 836 A.2d 191, 196 (R.I.2003) (quoting *State v. Smith,* 662 A.2d 1171, 1177 (R.I.1995)). Notwithstanding our holding in *Zmayefski,* we note the trial justice did not base his findings entirely on circumstantial evidence, as defendant contends. He relied in large part on Cardiff's testimony that she actually witnessed defendant putting a blister pack into her purse. From there he considered the testimony of several other witnesses before inferring that defendant disposed of the blister pack when she left the premises for fifteen minutes during her lunch break. Cole's testimony that she found a circular similar to the one Cardiff had seen wrapped around the pills after searching defendant's purse further bolstered the trial justice's findings. Thus, the evidence presented by the state sufficiently supports the trial justice's ruling.

The defendant points to inconsistencies in the testimony given by Cardiff, as well as Barbera, to demonstrate that the trial justice's findings of credibility were clearly erroneous. We reiterate the deference given to findings made by a trial justice sitting without a jury. *Silvia,* 798 A.2d at 424. Here, the trial justice thoroughly examined all the evidence before him and found the witnesses, particularly Cardiff, to be credible. This finding was made after the cross-examination, redirect examination, and recross-examination of Cardiff exposed the same inconsistencies defendant now raises on appeal as a basis for showing that Cardiff was not credible. The minor inconsistencies defendant raised concerning the details of the coatroom encounter between defendant and Cardiff do not render Cardiff's testimony unworthy of credence. From the moment Cardiff reported what she saw to Barbera, through

her pretrial statements given during the Attorney General's investigation and finally at trial, Cardiff did not waiver from her testimony that she saw defendant slip what she perceived to be a blister pack into her purse. Because we see no indication that Cardiff's testimony should not be believed, we defer to the trial justice's finding that it was credible.

The defendant also points to some minor inconsistencies between a statement Barbera gave to the Attorney General's Office and her testimony at trial; in particular, defendant says Barbera faltered on whether she removed newspapers from the coatroom before or after Cardiff told her what she had seen. We note that, in rendering his verdict, the trial justice did not rely at all on Barbera's testimony about her coatroom encounter with defendant. Thus, her testimony was not required to establish proof beyond a reasonable doubt. Assuming the testimony was material, the inconsistencies raised by defendant do not rise to the level that would require us to reverse the trial justice's determinations on the issue of credibility. Barbera may have been confused about when the encounter occurred; however, her account of defendant's strange and suspicious behavior remained consistent throughout the proceedings.

Understandably, while defendant tries to magnify minor inconsistencies in Cardiff's and Barbera's testimony, she tries to explain away the inconsistencies in her own pretrial statements made during the Attorney General's investigation. The trial justice noted that she told one investigator that she never left the premises during her shift on May 30. According to defendant, she had been forthright about her absence by punching in and out on the time clock and by telling another investigator that she had left for a smoke. The trial justice found her memory lapse, in addition to testimony given by another witness that she saw defendant drive away from Riverview and return fifteen minutes later, as indicia of guilt. We agree. A subsequent investigation established that defendant could have made it home and back in the time she was gone. It was reasonable to infer from these facts that defendant had hidden the blister pack in her purse and, when she became worried that someone else would find it, she left to hide or dispose of the evidence.

■ The defendant also argues that the trial justice wrongly interpreted her leaving Riverview during her break as evidence of flight. We disagree with defendant's characterization of the trial justice's finding. Flight from arrest or prosecution is an admission by conduct, the evidence of which shows consciousness of guilt. *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir.1977). In this case, however, defendant returned to the crime scene just minutes after leaving; she clearly was not trying to evade arrest or prosecution. The inference drawn by the trial justice was that she was disposing of the pills she had just purloined, presumably so her superiors would not find them in her purse. Because the trial justice did not use the evidence in question as an indication of flight, we need not consider defendant's argument.

The trial justice's finding that the defendant committed larceny of a controlled substance is supported by the evidence and, thus, we would not disturb this verdict. Therefore, even if the defendant had filed a motion to dismiss below, and the trial justice had denied it, we would uphold the trial justice's ruling.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The

record shall be remanded to the Superior Court.