STATE

v.

David LaROCHE.

No. 2003–327–C.A.

Supreme Court of Rhode Island.

Oct. 28, 2005.

Lauren S. Zurier, Esq., Providence, for Plaintiff.

Kevin J. Bristow, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The defendant, David LaRoche, appeals from a determination by a Superior Court justice that he violated the terms and conditions of his probation. This case came before this Court for oral argument on September 27, 2005, pursuant to an order directing all parties to appear and show cause why the issues raised in this appeal

should not summarily be decided. After considering the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we will proceed to decide the case at this time. For the reasons stated below, we affirm the judgment of the Superior Court.

### Facts and Procedural History

In 1993, in criminal case number W1/91–347A, a Washington County jury convicted LaRoche of two counts of obtaining money by false pretenses and three counts of conspiracy to obtain money by false pretenses. Those charges emanated from a scheme in which LaRoche defrauded certain credit unions through the artifice of sham or "straw" borrowers. These "straw" borrowers acquired funds from financial institutions and then funneled the money to LaRoche. The trial justice sentenced LaRoche to concurrent five-year terms of incarceration for the false pretenses counts, and imposed a fine of $5,000 for each count, as well. He also sentenced LaRoche to consecutive five-year terms of incarceration for the conspiracy counts, but those sentences were suspended. The trial justice also fined LaRoche $5,000 on each conspiracy count. LaRoche was placed on probation for five years consecutive to the sentences imposed on the false pretenses counts, and he was ordered to pay restitution.[1] Also, on September 28, 1998, the Superior Court entered a consent order that established LaRoche's restitution obligation at $4,452,909.12.

Unfortunately, that was not the end of LaRoche's contact with the criminal justice system. On June 23, 2000, LaRoche pled nolo contendere to a charge of perjury, and he was sentenced to ten years in prison.[2] He admitted that he executed an affidavit of financial condition under oath, knowing that the affidavit contained false material declarations. He later affirmed the contents of the perjurious affidavit at a hearing to determine his ability to pay restitution. As the result of a negotiated plea, LaRoche's ten-year sentence for perjury was suspended in its entirety, and LaRoche was placed on probation for ten years, consecutive to the sentence imposed in W1/91–347A.

On July 11, 2000, a second consent order was entered in which LaRoche, who was advised by counsel, agreed that he was capable of paying $300,000 on August 15, 2000, and making subsequent annual payments on July 1 of each year in the greater of $100,000, or 25 percent of his after-tax income, until restitution was paid in full. The Superior Court also ordered LaRoche to (1) cooperate with the Rhode Island Depositors Economic Protection Corporation (DEPCO) by providing certain financial documents and disclosing financial information when requested, (2) provide DEPCO with an updated affidavit of financial condition on an annual basis, and (3) provide DEPCO with copies of his tax returns.[3] This order was made a condition of the sentences imposed for the obtaining money by false pretenses and conspiracy convictions as well as the perjury conviction.

At first, LaRoche complied with the terms of the consent order, paying $300,000 in August 2000, and $100,000 on July 1, 2001. However, there is no dispute that LaRoche failed to pay the $100,000

---

1. This Court affirmed LaRoche's convictions in 1996. *State v. LaRoche,* 683 A.2d 989 (R.I.1996).

2. Criminal case no. P2/00–2122A.

3. DEPCO was created by the General Assembly to resolve the collapse of many of this state's credit unions in the early 1990s. G.L. 1956 § 42–116–2.

that was due on July 1, 2002. Without delay, the state commenced probation revocation proceedings against LaRoche, serving him with a notice pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure alleging that in addition to failing to pay the $100,000 that was due, he also failed to file affidavits of financial condition on a timely basis, failed to cooperate with DEPCO, and neglected to provide DEPCO with his tax returns. Lengthy hearings commenced before a hearing justice of the Superior Court in October 2002 to determine whether LaRoche's probation status should be revoked. The hearing justice ruled that LaRoche did not violate the terms of his probation by failing to file financial affidavits or provide DEPCO with his income tax returns. However, the hearing justice determined that LaRoche had not made the required restitution payment, despite being financially capable of doing so. The hearing justice also found that LaRoche had not adequately cooperated with DEPCO. Therefore, the court deemed LaRoche to be a violator of the terms of his probation and it sentenced him to serve in prison four of the five years remaining on his suspended sentence in case number W1/91–347A.[4]

On appeal, LaRoche argues: (1) that the lower court erroneously shifted the burden of proof to LaRoche to demonstrate his inability to pay restitution, (2) that the court failed to make sufficient findings of fact to support its ruling that LaRoche had not made sufficient bona fide efforts to pay restitution, and (3) that the imposed four-year sentence of incarceration is disproportionate to an extent that renders it constitutionally defective.

## Standard of Review

■ To establish a probation violation, the state must adduce reasonably sat-isfactory evidence of the defendant's violation of one of the terms of his probation. *State v. Piette*, 833 A.2d 1233, 1236 (R.I. 2003). This Court will reverse a probation-violation finding only if the hearing justice acted arbitrarily or capriciously. *Id.*

## Analysis

### I

### Burden of Proof

It is undisputed that LaRoche did not fulfill a condition of his probation when he failed to pay the $100,000 due on July 1, 2002, as part of his court-ordered restitution. When payment of money is made a condition of probation, and there is a claim of inability to pay, review must begin by considering the holding of the United States Supreme Court in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).

■ In *Bearden*, 461 U.S. at 672, 103 S.Ct. 2064, the United States Supreme Court held that when the state seeks to revoke probation based upon a failure to pay restitution, the sentencing court must inquire into the reasons for the noncompliance. If the probationer has made sincere efforts to legally acquire the necessary money, but remains unable to comply with a restitution obligation, then the court must consider alternate measures of punishment other than incarceration. *Id.* On the other hand, if the probationer has either refused to pay or has not made "sufficient bona fide efforts" to acquire the resources to pay, then the sentencing court may revoke probation and impose a prison sentence. *Id.* LaRoche contends that the hearing justice impermissibly shifted the burden to him to prove that he had made

4. The court left the suspended sentence in place on the perjury conviction.

sufficient bona fide efforts to pay restitution, and in doing so contravened the principles set forth in *Bearden.* We consider this argument to be without merit.

Although we have not heretofore decided this precise issue, other jurisdictions have applied the principles of *Bearden* to cases in which a probationer failed to pay restitution. Those jurisdictions place the burden on the probationer to establish that he or she made sufficient bona fide efforts to obtain the funds necessary to pay. The New Hampshire Supreme Court explained that "[t]he State's initial burden * * * is to show that the defendant did not meet a condition of his sentence * * *. The court then 'must inquire into the reasons for the failure to pay.' * * * If the defendant then 'demonstrate[s] sufficient bona fide efforts to repay his debt,' * * * alternatives to imprisonment must be considered * * *." *State v. Fowlie,* 138 N.H. 234, 636 A.2d 1037, 1039 (1994); *see also State v. Dumont,* 145 N.H. 240, 761 A.2d 454 (2000). Likewise, the Supreme Court of Wyoming applied the *Bearden* analysis and held that "once the State has established the failure of a probationer to pay restitution as ordered by the court, the probationer must establish any defense to revocation based on his alleged inability to pay." *Dickson v. State,* 903 P.2d 1019, 1023 (Wyo.1995).

While not precisely on point, Rhode Island case law in this area is instructive. In 1972, this Court held that in probation revocation hearings, when the state presents evidence that a probationer has violated the terms of his probation, "it is up to the probationer to explain it [the violation] away or run the risk of having his probation revoked." *Tillinghast v. Howard,* 109 R.I. 497, 502, 287 A.2d 749, 752 (1972). Similarly, this Court upheld the trial court's revocation of a defendant's probation status on the basis that the defendant

had failed to provide the court with an innocent explanation for his conduct or present evidence to support his defenses. *Piette,* 833 A.2d at 1237. Thus, in probation revocation hearings, this Court has placed the burden on the defendant to explain away any apparent deviation from the terms and conditions of his probation.

 It is also noteworthy that Rhode Island case law repeatedly places the burden on a party alleging inability to pay in other contexts. This Court held that before a body execution may be issued against a defendant who is a judgment debtor, the defendant must be given a hearing to determine ability to pay. *Landrigan v. McElroy,* 457 A.2d 1056, 1062 (R.I.1983). At such a hearing it is the defendant's obligation to demonstrate an inability to pay the judgment by a preponderance of the evidence. *Id.* In addition, with regard to a defendant's inability to pay court fees, this Court has held that "[i]n every instance the burden of proving indigence in relation to the payment of the required filing fee or other element of cost is upon the party seeking such relief." *Silvestro v. Almonte,* 484 A.2d 900, 903 (R.I.1984). In our opinion, the hearing justice did not err when he required LaRoche to satisfy the court that he made sufficient bona fide efforts to pay restitution.

## II

### The Trial Court's Findings of Fact

 LaRoche next contends that the evidence does not support the trial court's finding that he failed to make reasonable bona fide efforts to fulfill his restitution obligation. When reviewing a trial justice's decision in a probation revocation hearing, this Court is limited to considering whether the trial justice acted arbitrarily or capriciously in finding a violation. *Piette,* 833 A.2d at 1236. Moreover,

the burden of proof to establish a probation violation is that of "reasonably satisfactory evidence." *Id.*

██ Here, the trial justice based his finding that LaRoche failed to make a good faith effort to pay his restitution on ample evidence that prior to the date on which payment was due, LaRoche possessed sufficient money to meet his obligation, but that he dissipated available resources in a way that evinced a disregard for his responsibility. According to the evidence presented at the hearing, as of December 31, 2001, LaRoche's assets included $130,000 in a Credit Suisse bank account that he controlled. LaRoche also acknowledged that on July 1, 2002, the day on which payment was due, he held approximately $70,000 in the Credit Suisse account and approximately $24,000 in his business account with Sovereign Bank.[5] Further, the evidence gleaned from LaRoche's checking account revealed that in 2002, LaRoche purchased a $6,000 diamond engagement ring for his fiancée, invested $5,000 in a vehicle he did not own, paid for a vacation in Europe for himself and his fiancée, and purchased airline tickets for himself and two others in order to sail a boat from North Carolina to Rhode Island. These types of expenditures by LaRoche are not consistent with his claim that he made a good faith effort to pay his restitution. Rather, they demonstrate a cavalier, if not reckless, disregard for the obligation to which he had agreed and which was ordered by the court as a condition of probation.

In addition, the hearing justice found LaRoche's testimony to be untruthful and evasive. The record reflects that LaRoche failed to disclose his bank accounts or make an accurate accounting of his monetary holdings, even when under oath. LaRoche also placed assets in the names of his children, his attorneys, and other individuals. Such conduct reasonably gives rise to an inference of intent to conceal. In light of this evidence, it was more than reasonable for the hearing justice to conclude that LaRoche was not credible.

██ The hearing justice in a violation hearing is permitted to draw reasonable inferences from the evidence presented and assess the credibility of a witness. *State v. Sylvia,* 871 A.2d 954, 958 (R.I. 2005); *Piette,* 833 A.2d at 1236. We concur with the hearing justice's finding that the evidence produced was sufficient to support his conclusion that LaRoche failed to make good faith efforts to comply with his restitution obligation, and as such he had violated his probation. We hold that the trial justice was neither arbitrary nor capricious in so finding.

LaRoche further argues that the hearing justice erred because he failed to make any findings with respect to LaRoche's reasonable living and business expenses. However, the record reveals that the trial court accepted LaRoche's representation, in a September 2002 affidavit, that his reasonable living and business expenses were $6,000 per month. In fact, the court noted that in the six months before July 1, 2002, the date on which the $100,000 restitution payment was due, LaRoche had spent $77,000, and thereby exceeded his own estimate as to what constituted reasonable living and business expenses. We reject LaRoche's argument as contrary to the record.

## III

### Excessive Punishment and Disproportionate Sentencing

██ LaRoche finally argues that the penalty imposed for violating the

---

**5.** LaRoche maintained that the true balance of the Sovereign Bank account was less than $24,000 because of outstanding checks and other obligations.

terms of his probation is constitutionally infirm because it is disproportionately harsh for a mere technical violation of probation. This argument, however, fails on two grounds. First, the issue was not raised in the trial court and therefore cannot be raised on appeal. *State v. Silvia,* 798 A.2d 419, 427 (R.I.2002). "It is axiomatic that 'this [C]ourt will not consider an issue raised for the first time on appeal that was not properly presented before the trial court.' " *Id.* This Court has carved out an exception to this rule when " 'basic constitutional rights are concerned,' * * * the alleged error [is] more than harmless, and the exception * * * implicate[s] an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been known to counsel at the time of trial." *Id.* LaRoche does not fit within this narrow exception to the rule. Thus, this issue is waived on appeal.

 But, even if LaRoche had raised this issue before the hearing justice and then properly preserved it for appeal, we would consider it unavailing. LaRoche's argument fails to recognize the well-established principle that when a probationer violates the terms of his or her probation, such conduct triggers liability for the prison term that originally was imposed for the underlying offense. *State v. Burke,* 811 A.2d 1158, 1168 (R.I.2002). Therefore, the constitutionality of a sentence of incarceration for violating probation must be weighed in the context of the original offense. LaRoche originally was sentenced to five years of incarceration after being convicted on two counts of obtaining money by false pretenses and three counts of conspiracy to obtain money by false pretenses. He later was sentenced to ten years of incarceration for perjury, which sentence was suspended, with probation. Any objection to these sentences should have been made within 120 days of the time when the sentence was imposed, pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure. It cannot be properly maintained in this proceeding.

## Conclusion

For the reasons stated here, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.