State                          :

v.                          :

Judith Rosenbaum.                 :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | |
|---|---|
| State | : |
| v. | : |
| Judith Rosenbaum. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**

> "And my more-having would be as a sauce
> To make me hunger more; that I should forge
> Quarrels unjust against the good and loyal,
> Destroying them for wealth."[1]

The defendant, Judith Rosenbaum, appeals from a judgment of the Superior Court denying her request to reduce the amount of her monthly restitution obligation. The defendant was ordered to pay $95,000 in restitution to the victim of a crime, in monthly installments of $500; she now claims that she is able to pay only $237[2] per month and that, therefore, her payments should be reduced by $263.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further

---

[1] William Shakespeare, <u>Macbeth</u>, act 4, scene 3.
[2] In defendant's motion to reduce her restitution payments, she argued for a reduced amount of $237 per month. On appeal, she has changed this amount to $235.

briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Procedural History

On June 23, 2009, defendant was charged by criminal information with four counts of uttering or delivering checks in an amount exceeding $1,500 with intent to defraud, in violation of G.L. 1956 § 19-9-25 (counts 1-4); one count of misappropriating property, in violation of G.L. 1956 § 11-41-11.1 (count 5); and one count of obtaining goods valued at more than $500 by false pretenses with intent to cheat or defraud, in violation of § 11-41-4 and § 11-41-5 (count 6). The charges stemmed from defendant having issued and then stopped payment on several checks paid to James Sangiovanni, d/b/a Design House Bath and Kitchen Studio, in connection with a $129,592 home renovation that Sangiovanni performed for defendant and her husband, on property that the couple owned in Portsmouth, Rhode Island.[3]

The defendant pled nolo contendere before a Superior Court justice to counts 1, 5, and 6; the remaining counts were dismissed by the state. On August 10, 2010, defendant was sentenced to two years suspended with two years of probation on count 1, and seven years suspended with seven years of probation on counts 5 and 6, and she was ordered to pay $95,000 in restitution relating to count 5 (misappropriation of property, to wit, custom kitchen cabinets). The issue of payment of restitution was referred to a Superior Court magistrate. In January 2011, the magistrate set defendant's monthly restitution payments at $500. The defendant submitted $500 payments in February, March, April, June, August, September, October, and December 2011, as

---

[3] This property was subsequently foreclosed upon.

well as an additional $1,000 payment in October 2011.[4]  In 2012, defendant made $1,000 payments in January, May, and August, as well as a $500 payment in September and a $2,000 payment in December.

On January 17, 2013, defendant appeared before the magistrate on a motion to reduce her monthly payments.[5]  The defendant argued that her payments should be reduced to $237, which was the amount that she received monthly from a pension benefit.  She asserted that the remainder of her income consisted of $907 per month in social security benefits, and that it would be a violation of federal social security law to require her to allot any portion of this money to her restitution obligation.

During the hearing on January 17, 2013, defendant testified that her husband had lost his job as a physician in June 2012 and that, therefore, her financial circumstances had changed since she was originally ordered to pay $500 per month in restitution.  The majority of this hearing consisted of defendant's testimony relating to a financial statement that was introduced into evidence.  This testimony revealed that she and her husband were apparently attempting to maintain their erstwhile lifestyle, one which their income no longer supported.

The defendant disclosed at the hearing that she and her husband resided in a waterfront house located in Portsmouth, Rhode Island, valued at $950,000.[6]  Although they had purchased this house in the early 1990s for approximately $600,000, the mortgage balance as of January 2013 was $1,300,000; thus, after owning the property for roughly twenty years, they had accrued

---

[4] Additionally, a settlement check in the amount of $12,742.51 was released to Sangiovanni in July 2011 and credited as partial payment of restitution.

[5] The defendant's motion to reduce her monthly restitution payments was also dated January 17, 2013.

[6] The defendant's waterfront residence in Portsmouth was not the same home in which the kitchen cabinets had been installed.

negative equity in the amount of $350,000.[7] The financial statement revealed that the monthly mortgage payment for this property was $8,850, with a monthly property tax obligation of $1,542. She and her husband, however, were more than one year in arrears on their payments and were currently in the midst of foreclosure proceedings.[8] She testified that they were not currently making their monthly mortgage payments and that the bank was paying their property taxes.

The defendant's financial statement also revealed that she and her husband owned two cars, a 2007 Toyota Highlander and a 2008 Toyota Prius, and were making monthly payments of $865 and $680, respectively. The loans on these vehicles showed balances of $32,000 and $21,000, with no equity in either car. The defendant testified that her husband drove the Prius and that she had previously been using the Highlander but now had an "incredible difficulty driving" because of a back injury.[9] In addition to the vehicle loan payments, defendant and her husband spent $174 per month on car insurance and $256 per month on gas.

The defendant's additional monthly expenditures included $804 on homeowner's insurance; $745 on life insurance; $200 on clothing and shoes; $150 on cable television/internet; and $100 on charitable donations. Additionally, she and her husband owed $11,000 on a line of credit with Harris Furs and had been making $600 monthly payments on this account until her husband became unemployed. When asked at the hearing whether defendant had considered selling some of the furs so that she could pay restitution, she admitted that this "was a

---

[7] According to defendant, she and her husband invested a significant amount of money into "fixing up the house," which renovations included installing an indoor pool, because it was "the only rehab [defendant] could use" after she had been involved in a "serious car accident."

[8] According to a document admitted into evidence at the hearing, defendant and her husband were $457,877.49 in arrears on their mortgage as of June 29, 2012.

[9] When asked at the hearing, "[w]hen was the last time you drove the [Highlander]?" defendant responded, "[i]t was last week for a distance of five minutes. * * * I don't drive long distances * * * ."

possibility." The defendant did not indicate that she had seriously considered selling the Highlander, canceling her cable subscription, or reducing her monthly expenditures on charity, clothing, or shoes[10] in order to pay her restitution obligation. She also testified that she owned jewelry but had not thought about selling any of it.[11]

At the conclusion of defendant's testimony, the magistrate issued a bench decision denying defendant's motion to reduce her monthly restitution payments and ordering her to continue making monthly payments of $500.[12] The magistrate found that defendant had failed to "present[] any indication to the court that [she was] financially unable to make [the restitution] payments" without dipping into her social security funds. The magistrate noted that defendant was paying nearly $900 per month on a vehicle that she barely used, and that her expenditures on cable television, charity, clothing, and shoes were resources that could be allocated toward her restitution obligation. Additionally, the magistrate noted that defendant had not presented evidence regarding the value of her assets in personal property, such as her jewelry or the furnishings in her "million dollar home." An order reflecting the magistrate's decision was entered on February 1, 2013, and defendant appealed the matter to the Superior Court.

The defendant made two payments of $500 in March and May of 2013 and then moved on May 21, 2013 to stay the restitution order pending appeal. The magistrate denied this motion and ordered defendant to pay $2,000 by May 28, 2013, and to continue to pay $500 per month thereafter. On May 30, 2013, a justice of the Superior Court entered an order that stayed the

---

[10] When asked about her expenditure on clothing and shoes, defendant stated: "I[] had to replace my shoes because I can't even wear heels. I can't wear even boots with heels because it is impossible for me to walk."

[11] The defendant explained: "I gave a lot of my jewelry to my youngest daughter because she didn't have money at all."

[12] The magistrate also denied a motion by the state to increase defendant's monthly restitution payments to $1,000.

previous order pending a hearing on June 6, 2013, on the condition that defendant pay $1,000 by 9:30 a.m. on May 30, 2013. The defendant complied with this order.

A hearing was held in Superior Court on June 6, 2013, on the appeal of the magistrate's decision denying defendant's motion to reduce her restitution payments. The hearing justice noted that she had reviewed the transcript of the previous hearing before the magistrate, as well as the filings of defendant and the state. She then explained that the standard of review for this matter was set forth in G.L. 1956 § 42-35-15, which was a "very deferential standard[] to the decision of * * * the magistrate as to questions of fact." The hearing justice further explained that, under this limited standard of review, factual findings would be overturned if clearly erroneous, and issues of law would be reviewed de novo.

The defendant argued that the magistrate had erroneously concluded that she had sufficient assets, aside from her social security benefit, to pay $500 per month. The defendant also reminded the court that her husband was not obligated to pay restitution and, therefore, that his assets could not be counted toward defendant's ability to make the required payments. The state, for its part, argued that defendant had access to numerous assets that could be liquidated, and that she could easily reallocate some of the funds she was spending on unnecessary expenses in order to satisfy her restitution obligation.

The hearing justice began her bench decision by noting that defendant had borne the burden of proof in seeking to show that she was unable to make the $500 monthly payments, and that she had "willfully failed to meet" this burden. Next, the hearing justice briefly summarized the potential areas that could yield additional funds for the payment of restitution, including the furs, the Highlander, insurance on the Highlander, cable television, life insurance, clothing, shoes, and charitable donations. The hearing justice also noted that defendant had

"acknowledged being in possession of numerous items of jewelry," and that "it was her burden to establish that that jewelry could not be sold and to establish the value and what amount of money could be yielded from that." Similarly, defendant had failed to account for the furnishings inside her home. The hearing justice also noted that defendant had failed to provide any tax returns relating to years after 2007, which "further mudd[ied] the record" as to her potential assets. Accordingly, the hearing justice denied defendant's appeal. She also vacated the previously imposed stay and ordered defendant to pay the additional $1,000 pursuant to the magistrate's order.[13] Judgment reflecting the hearing justice's decision was entered on October 1, 2013, and defendant filed a timely appeal.[14]

## II

### Standard of Review

General Laws 1956 §§ 8-2-11.1(e) and 8-2-39(f) provide that final orders of the Superior Court entered in a proceeding to review an order of a magistrate may be appealed to the Supreme Court. On appeal, this Court will not disturb the factual determinations of the Superior Court justice unless he or she made clearly erroneous findings or misconceived or overlooked material evidence. See Wilby v. Savoie, 86 A.3d 362, 372 (R.I. 2014). The hearing justice may "draw inferences from the testimony of witnesses, and such inferences, if reasonable, are entitled on review to the same weight as other factual determinations." Rhode Island Mobile Sportfishermen, Inc. v. Nope's Island Conservation Association, Inc., 59 A.3d 112, 118 (R.I.

---

[13] The defendant made payments of $1,000 in June, August, October, and December 2013. In 2014, she paid $500 in April and May, $1,000 in February, August, and October, and $1,500 in September. According to the Superior Court docket and the parties' assertions during oral arguments before this Court, defendant has not made any restitution payments since October 2014.

[14] The defendant filed two notices of appeal in this case: one from a June 6, 2013 order denying defendant's appeal and confirming the magistrate's decision, and one from the October 1, 2013 final judgment. These two appeals were consolidated by this Court.

2013) (quoting Cahill v. Morrow, 11 A.3d 82, 86 (R.I. 2011)). Furthermore, we shall "accord great weight to a [hearing] justice's determinations of credibility, which, inherently, are the functions of the trial court and not the functions of the appellate court." Wilby, 86 A.3d at 372 (quoting Cullen v. Tarini, 15 A.3d 968, 976 (R.I. 2011)). "We will, however, review questions of law de novo." Id.

### III

### Discussion

On appeal, defendant argues that the findings of the magistrate and the hearing justice "were clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record * * * ." According to defendant, the financial statement introduced into evidence at the hearing showed that defendant's only source of income was from her social security and pension benefits, and she contends that this proved her inability to pay more than the amount of the pension benefit. The defendant avers that "there was no evidence in the record that established that [she] had such other assets that would fund $500.00 per month in restitution," and that most of the monthly expenses listed on the financial statement were being paid by her husband.

The state argues that there was "ample evidence in the record to support" the decisions of the magistrate and the hearing justice. The state asserts that the magistrate and the hearing justice did not err in concluding that defendant had sufficient sources of income, aside from her social security benefit, to make $500 monthly restitution payments. The state also notes that "defendant's continued expenditure of money to litigate the restitution obligations she incurred as a result of her [nolo contendere] plea would seemingly belie her claim that she worries continually about having money to feed herself and her husband."

- 8 -

We have previously held that a defendant who claims an inability to comply with a restitution order bears the burden of proving that he or she has made sufficient efforts to acquire the necessary funds. See State v. LaRoche, 883 A.2d 1151, 1155 (R.I. 2005). We are convinced that the hearing justice did not err in determining that the defendant has failed to meet this burden of proof. As described above, her testimony revealed numerous assets that could potentially be liquidated and significant expenses that could be reduced in order to direct more funds toward her restitution obligation. When asked about these expenses and assets, she responded elusively, at no time presenting the court with evidence that she had made a good-faith effort to procure the additional $263 that was purportedly missing from her monthly budget. Similarly, she now makes a vague claim that her husband is paying her monthly expenses, but she has not supported this assertion with any evidence. Indeed, the financial statement upon which she relied below does not indicate how she is paying any of her enumerated expenses.[15] Additionally, she failed to provide the court with tax returns for any years after 2007, despite being instructed to do so on January 25, 2011; nor did she provide any documents to support the various expenses listed on her financial statement. After reviewing the record of this case, we think it is clear that the defendant has patently failed to meet her burden of proving an inability to maintain payments of $500 per month.

---

[15] Furthermore, it became apparent at the hearing that the financial statement was not entirely accurate. Although the financial statement was dated and notarized on January 17, 2013 and included the expenses of a mortgage payment, property taxes, and an installment payment to Harris Furs, defendant revealed at the hearing that she and her husband were not actually making payments on any of these obligations.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

The record of this case shall be returned to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**          State v. Judith Rosenbaum.

**CASE NO:**          No. 2014-17-C.A.
No. 2014-18-C.A.
(N2/09-161A)

**COURT:**          Supreme Court

**DATE OPINION FILED:**  April 17, 2015

**JUSTICES:**          Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**     Newport County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Judith C. Savage

General Magistrate Patricia L. Harwood

**ATTORNEYS ON APPEAL:**

For State:  Jane M. McSoley
Department of Attorney General

For Defendant:  Joseph F. Hook, Esq.